## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Dec 13, 2019

| | |
|---|---|
| IN RE:<br><br>JEFFREY LYN MORROW,<br><br>        Debtor. | Case No. 18-12437-M<br>Chapter 7 |
| IN RE:<br><br>MICHELLE RENEE MORROW,<br><br>        Debtor. | Case No. 18-12447-M<br>Chapter 7 |
| C & L SUPPLY, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>JEFFREY LYN MORROW,<br><br>        Defendant. | Adversary No. 19-01007-M<br>(consolidated with 19-01008-M) |
| C & L SUPPLY, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>MICHELLE RENEE MORROW,<br><br>        Defendant. | Adversary No. 19-01008-M |

## ORDER DENYING
## MOTION FOR SUMMARY JUDGMENT

In the ordinary chapter 7 bankruptcy case, a debtor schedules all of their past and current

debts in order to take advantage of the full extent of the discharge available under § 727 of the Bankruptcy Code.[1] In the rare case that a debtor omits a bona fide debt from their schedules, the extent of the debtor's discharge of that debt may be unclear.  Further determination, either by the bankruptcy court or a state court of competent jurisdiction, may be required to clarify whether, and to what extent, the debt was covered by the order of discharge entered in the debtor's bankruptcy case, and whether it is still enforceable against the debtor.  Before the Court is the Motion for Summary Judgment (the "Motion"),[2] filed by C & L Supply, Inc. ("C&L" or "Plaintiff"),  a Response,[3] filed by Michelle Renee Morrow ("Michelle Morrow") and Jeffrey Lyn Morrow ("Jeff Morrow") (collectively the "Defendants" or "Morrows"), and a Reply, filed by Plaintiff.[4] The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7056.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409.  Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a).  Determination as to the dischargeability of a debt is a "core" proceeding as that term is defined in 28 U.S.C. § 157(b)(2)(I).

---

[1] 11 U.S.C. § 727.   Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

[2] Docket No. 15. On October 22, 2019, this Court ordered that Adversary Proceeding Nos. 19-01007-M and 19-01008-M be consolidated, and that this matter will proceed under Adversary Proceeding No. 19-01007-M. All docket numbers referenced herein will refer to that proceeding, unless otherwise stated.

[3] Docket No. 16.

[4] Docket No. 17.

### Summary Judgment Standard

The United States Court of Appeals of the Tenth Circuit has held that

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.* Put differently, "[t]he question . . . is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Shero v. City of Grove,* 510 F.3d 1196, 1200 (10th Cir. 2007) (quotation omitted). "On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quotation omitted).[5]

The Court will apply this standard to the Motion.

### Findings of Fact

There is no genuine dispute as to the following material facts:[6]

1.  Tri-City ("Tri-City") is a plumbing company owned by the Morrows.

2.  Beginning in at least 2007, Tri-City set up an account with C&L through which C&L sold various plumbing supplies and merchandise to Tri-City.

3.  Initially, Michelle Morrow individually guaranteed Tri-City's account with C&L.

4.  In May, 2009, Tri-City was seriously delinquent on its account with C&L and owed

---

[5] *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013).

[6] These facts were alleged by C&L in the Motion, Docket No. 15, at 8–11, and not controverted by the Morrows. As a result, they are deemed admitted for purposes of the pending summary judgment motion. *See* Bankr. N.D. Okla. LR 7056-1(B) ("All properly supported material facts set forth in the movant's statement shall be deemed admitted for the purpose of summary judgment unless specifically controverted by a statement of the non-movant that is supported by evidentiary material.").

C&L $406,829.13.

5.    Through a series of meetings, C&L determined to loan Tri-City an additional $25,000.

6.    The purpose of the loan was to keep Tri-City in operation to allow Tri-City to finish jobs through which C&L would hopefully receive significant payments.

7.    The loan was documented through a promissory note from Tri-City to C&L and Guaranty Agreements signed by both of the Morrows.

8.    Through the Guaranty Agreements, both Michelle Morrow and Jeff Morrow guaranteed all indebtedness of Tri-City to C&L.

9.    The Morrows' Guaranty Agreements also included representations from the Morrows to C&L. The representations included representations that (i) the fair saleable value of each Guarantor's assets exceeded their liabilities; (ii) each Guarantor was then meeting current liabilities as they mature; and (iii) no federal or state tax liens had been threatened or filed against each Guarantor.

10.   About the same time, C&L also began requiring joint check agreements and outright assignments of Tri-City's accounts on Tri-City's larger jobs or projects.

11.   The joint check agreements required Tri-City's customers to include C&L as a joint payee on checks issued to Tri-City.

12.   From December 9, 2009 through February 16, 2010, C&L's endorsement was forged on at least three checks totaling $33,426.90.

13.   The fraudulently endorsed checks were deposited into Tri-City's account, instead of being paid to C&L.

4

14.     On December 6, 2010, Michelle Morrow and Jeff Morrow each filed separate petitions for relief under chapter 7 of the United States Bankruptcy Code (the "2010 Bankruptcy Cases").

15.     Both Defendants failed to list C&L as a creditor in the 2010 Bankruptcy Cases and C&L was not listed or included on any mailings or notices of the bankruptcy filings.

16.     At the time the Morrows filed their 2010 Bankruptcy Cases, they owed C&L $259,922.15, and C&L would have been the Morrows' largest unsecured creditor.

17.     After the 2010 Bankruptcy Cases, C&L continued to do business with Tri-City.

18.     By early 2014, the account of Tri-City and the Morrows grew, and C&L filed suit against the Morrows and Tri-City on the account in the District Court of Craig County, Oklahoma (the "State Court" and "State Court Action"). The Petition of C&L placed the dischargeability of the Morrows debt to C&L squarely at issue. The Petition alleged the Morrows had filed bankruptcy; alleged that the Morrows had failed to notify C&L of the bankruptcy filing; and alleged that the Morrows' debt to C&L was therefore not discharged by the 2010 Bankruptcy Cases.[7]

19.     On April 12, 2014, the Morrows and Tri-City filed separate answers to the Petition of C&L in the State Court Action. In their answers, the Morrows admitted that the debt to C&L was not discharged by the 2010 Bankruptcy Cases. Also, each of the answers included eight affirmative defenses, however, neither the Morrows nor

---

[7] Defendants deny that they failed to notify C&L of the 2010 Bankruptcy Case filings. They do not raise a genuine dispute that the Petition in the State Court Action *alleged* that they failed to notify C&L of the 2010 Bankruptcy Cases, which is all that the Plaintiff seeks to establish in ¶18 of the Motion.

Tri-City asserted discharge in bankruptcy as an affirmative defense.

20.    The parties proceeded with scheduling and discovery in the State Court Action throughout 2014 and most of 2015.

21.    On November 19, 2015, C&L obtained judgment in the State Court Action against Tri-City and the Morrows totaling $456,003.35 (the "State Court Judgment").

22.    C&L proceeded with execution on its judgment, including garnishments and asset hearings.

23.    On December 13, 2018, Jeff Morrow filed a second petition for relief under chapter 7 of the United States Bankruptcy Code, Case No. 18-12437-M.

24.    On December 17, 2018, Michelle Morrow filed a second petition for relief under chapter 7 of the United States Bankruptcy Code, Case No. 18-12447-M (together with Case No. 18-12437-M, the "2018 Bankruptcy Cases").

25.    On February 15, 2019, C&L initiated the present adversary proceedings against Michelle Morrow and Jeff Morrow.

26.    The Complaints filed by C&L seek a judgment of this Court determining that the following debt of the Morrows to C&L is non-dischargeable:

a. the sum of $106,594.47 (which was reduced to judgment in the State Court Action) on the forged endorsement of C&L on three checks; and

b. the sum of $54,628.15 (which was reduced to judgment in the State Court Action) on the Morrows' guaranty of the $25,000 loan obtained by the Morrows from C&L through false pretenses, false representations and actual fraud.

Additionally, the Court notes that the debt to C&L is listed in the schedules of Debtor Jeff

6

Morrow in his pending case as disputed.[8] The debt to C&L is listed in the schedules of Debtor Michelle Morrow in her pending case, but it is not listed as contingent, unliquidated, or disputed.[9] To the extent the Conclusions of Law contain any items that should more appropriately be considered Findings of Fact, they are incorporated herein by this reference.

### Conclusions of Law

C&L filed these adversary proceedings asserting that the debt owed to it by the Morrows is not dischargeable pursuant to § 523(a)(2) and/or (a)(4).  In the Motion and Reply, C&L alleges that the State Court Judgment precludes this Court from reconsidering whether the debt was discharged in the 2010 Bankruptcy Cases, under the doctrine of *res judicata*, or claim preclusion.  C&L goes on to allege that the same doctrine precludes this Court from considering the dischargeability of the debt in the 2018 Bankruptcy Cases.  In addition, C&L asserts that various statements made during the course of the State Court Action, including facts deemed admitted by the Morrows in that action, are now binding on this Court under the doctrine of collateral estoppel, or issue preclusion.  Defendants disagree, and believe that the debt was definitively discharged in the 2010 Bankruptcy Cases, rendering the State Court Judgment void *ab initio*, or if not, leaving it to this Court to decide whether the debt is dischargeable in the 2018 Bankruptcy Cases.

Resolution of this matter requires the Court to determine 1) whether the debt to C&L was covered by the Morrows' discharges entered pursuant to § 727 in the 2010 Bankruptcy Cases; 2) whether the State Court had the authority to make a determination of dischargeability of C&L's debt in the State Court Action; 3) whether the State Court Judgment precludes this Court from

---

[8]  *See* Case No. 18-12437-M, Docket No. 1, at 21, Claim 4.2.

[9]  *See* Case No. 18-12447-M, Docket No. 1, at 19, Claim 4.2.

7

considering the issues of dischargeability of the debt under any Oklahoma preclusion doctrines; and, finally, 4) the status of the debt in the 2018 Bankruptcy Cases and this Court's role going forward. In doing so, the Court will take care to view inferences drawn from the underlying facts in the light most favorable to the Morrows.[10]

*1. The debt to C&L was not covered by the Morrows' discharges entered pursuant to § 727 in the 2010 Bankruptcy Cases.*

Among the obligations of a debtor to receive a discharge of debts in bankruptcy, § 521 provides that "(a) [t]he debtor shall–(1) file–(A) a list of creditors; and (B) unless the court orders otherwise–(i) a schedule of assets and liabilities[.]"[11] Those same duties are required by Rule 1007(a)(1) and (b)(1).[12] Under chapter 7 of the Bankruptcy Code, in exchange for executing their duties under § 521, "the court shall grant the debtor a discharge" absent various conditions not applicable here.[13] The scope of the discharge is set out in § 727(b): *"Except as provided in section 523 of this title,* a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter . . . ."[14] This applies to *all debts* whether or not they are listed or scheduled by the debtor, subject to the exceptions contained in § 523.[15] Section 523 provides a list of 19 specific types of debts that are not subject to the § 727

---

[10]  *See supra* text accompanying note 5.

[11]  § 521(a)(1).

[12]  Fed. R. Bankr. P. 1007.

[13]  § 727(a).

[14]  § 727(b) (emphasis added).

[15]  *Id.*; *Judd v. Wolfe*, 78 F.3d 110, 113–14 (3d Cir. 1996).

discharge.  Those include debts of the type described in § 523(a)(2), (4), and (6), which arise from intentional torts.[16]  Section 523(c) makes clear that "except as provided in subsection (a)(3)(B)," a creditor must make a timely request of the bankruptcy court to determine whether a debt of a kind specified in § 523(a)(2), (4), or (6) is excepted from discharge.[17]  Such a determination of dischargeability under those subsections is within the *exclusive jurisdiction* of the bankruptcy court.[18] Where a creditor holding a debt for an alleged intentional tort receives adequate notice of a bankruptcy filing, failure to file a timely non-dischargeability request will result in the debt being discharged under § 727.[19]  Once a debt is discharged under § 727, § 524(a)(2) provides that the discharge operates as an injunction against any further attempt to collect the debt as a personal liability.[20]  Therefore, any collection activity in a state court setting would be prohibited, and any

---

[16]  *Judd v. Wolfe*, 78 F.3d at 114 ("Debts listed in sections 523(a)(2), (4) and (6) describe debts which arise from intentional torts such as fraud. They include debts incurred by 'false pretenses, false representation or actual fraud . . .' (523(a)(2)); debts incurred by 'fraud or defalcation while acting as a fiduciary . . .' (523(a)(4)); and debts 'for willful and malicious injury . . .' (523(a)(6)").

[17]  § 523(c)(1) ("Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.").

[18]  *Id. See also Brown v. Felson*, 442 U.S. 127, 129–30 (1979); *Buke, LLC v. Eastburg (In re Eastburg*), 447 B.R. 624, 633 (10th Cir. BAP 2011).

[19]  § 523(c)(1).  *See also Hathorn v. Petty (In re Petty*), 491 B.R. 554, 558 (8th Cir. BAP 2013).

[20]  § 524(a)(2). *See, e.g., Lone Star Security & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 171 (9th Cir. BAP 2005).

resulting judgment would be void upon entry.[21]  This is true whether or not the creditor has notice of the discharge.[22]

In addition to the three sections excepting intentional torts from discharge that require a determination by the bankruptcy court, § 523 contains 16 other categories of non-dischargeable debts that are self-effectuating.  Debts falling under these sections are excepted from discharge simply due to their character, and do not require a separate judicial determination.[23]  "The scope of a discharge is final when entered and subsequent events do not change what debts were or were not discharged by that discharge."[24] Whether a particular debt falls into one of these categories, however, may not be obvious, and may require further judicial determination.[25] A determination of dischargeability under any of these 16 categories is in the nature of a declaratory judgment, and may be made by the bankruptcy court or in any appropriate non-bankruptcy forum.[26]  A request for such a judgment may

---

[21] § 524(a)(1); *In re Gurrola*, 328 B.R. at 175 ("It follows that judgments and acts in violation of the injunction are automatically void ab initio, hence self-executing, for the same reason as the automatic stay.").

[22] *In re Gurrola*, 328 B.R. at 175 ("While lack of notice of the bankruptcy and of the discharge may serve as a defense to contempt sanctions, the legal consequences of acts in violation of the discharge injunction do not otherwise vary.") (citation omitted).

[23] *In re Everly*, 346 B.R. 791, 795 (8th Cir. BAP 2006) ("There are nineteen exceptions to discharge listed in § 523(a) and all but three are self-effectuating. . . .By self-effectuating, we mean that no action is required before the discharge is entered. The debts are excepted from discharge simply because of the nature of the debts.") (citation and footnote omitted).

[24] *In re Anderson*, 72 B.R. 495, 496 (Bankr. D. Minn. 1987).

[25] *In re Everly*, 346 B.R. at 795 (citing *In re Anderson*, 72 B.R. at 496).

[26] 28 U.S.C. § 1334(b).  *See In re Franklin*, 179 B.R. 913, 919 (Bankr. E.D. Cal. 1995) ("Section 1334(b) establishes the general proposition that state and federal courts have concurrent subject matter jurisdiction over civil proceedings that arise under, arise in, or are related to a bankruptcy case."); *In re Candidus*, 327 B.R. 112, 116–17 (Bankr. E.D.N.Y. 2005)

be filed by either a debtor or creditor "at any time," in either a bankruptcy court or a state court of competent jurisdiction.[27]

Among the debts excepted from discharge are those where the debtor failed to list a creditor or schedule the liability in time for the creditor to meaningfully participate in the case. Section 523(a)(3) states:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
>> (3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit–
>>
>>> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
>>>
>>> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.][28]

As one court summarized,

---

("Jurisdiction to determine dischargeability of these categories of debt is held concurrently by the bankruptcy court and any appropriate non-bankruptcy forum." (citing 28 U.S.C. § 1334(b); Fed. R. Bankr. P. 4007 advisory committee's note (1983))); *In re Keenom*, 231 B.R. 116, 125 (Bankr. M.D. Ga. 1999) ("Because the discharge has already taken place, the relief sought from the court by the parties after the case has closed is not an order to discharge the debt, but rather a declaratory order that the debt was or was not already discharged." (citing *In re Anderson*, 72 B.R. at 497)).

[27] Fed. R. Bankr. P. 4007(a) ("A debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt."); Fed. R. Bankr. P. 4007(b) ("A complaint *other than under § 523(c)* may be filed at any time.") (emphasis added).

[28] § 523(a)(3).

11

[T]his exception to dischargeability is applicable in only two situations. First, § 523(a)(3)(A) excepts unscheduled debt from discharge, where the creditor, due to the absence of notice or actual knowledge of the bankruptcy filing, failed to file a timely proof of claim. A timely proof of claim is crucial to a creditor's right to participate in a Chapter 7 distribution of assets and § 523(a)(3)(A) protects that right. Second, § 523(a)(3)(B) excepts unscheduled debt from discharge, where the creditor, due to the absence of notice or actual knowledge of the bankruptcy filing, failed to timely exercise his right to obtain a dischargeability determination of debts "of a kind specified in" § 523(a)(2), (4), or (6). Thus, § 523(a)(3)(B) protects the right of an unscheduled creditor to obtain a determination of nondischargeability of intentional tort debts, and helps vouchsafe the public policy that debts discharged in a Chapter 7 case are only debts honestly incurred.[29]

Courts have found that the simple act of failure to list a creditor or schedule a particular debt is enough to bring that debt within the rubric of § 523(a)(3).[30]  The failure of the debtor to list a creditor/schedule a debt that is "of a kind specified in § 523(a)(2), (4), or (6)" unlocks the concurrent jurisdiction of a competent non-bankruptcy forum to determine whether the debt meets the criteria set forth in § 523(a)(3)(B).[31]  A creditor need only have a colorable claim for an unscheduled intentional tort in order to create an issue of fact regarding whether the debt has been discharged.[32]

---

[29]  *In re Candidus*, 327 B.R. at 117.

[30]  *In re Massa*, 217 B.R. 412, 420 (Bankr. W.D.N.Y. 1998) ("A debtor who fails to list a debt of a kind specified in Section 523(a)(3)(B) loses the jurisdictional protections of Section 523(c)."), *aff'd sub nom. Massa v. Addona*, No. 98-CV-6069, 1998 WL 34256560 (W.D.N.Y. July 9, 1998), *aff'd sub nom. In re Massa*, 187 F.3d 292 (2d Cir. 1999); *In re Franklin*, 179 B.R. at 924 ("In short, the penalty to the debtor for failing to schedule a fraud debt or otherwise to inform the creditor of the bankruptcy is forfeiture of the right to enjoy exclusive federal jurisdiction and loss of the sixty-day limitations period applicable in the exclusive jurisdiction actions.").

[31]  *In re Massa*, 217 B.R. at 419.

[32]  *In re Keenom*, 231 B.R. at 126–27 ("And if the state court finds the debtor does have a colorable claim under sections 523(a)(2), (4), or (6) and was deprived of the opportunity to timely request a determination of dischargeability of the debt because he had no notice of the bankruptcy proceeding in time to do so, then such a state court has the authority to declare that the debt was not discharged in the bankruptcy proceeding and proceed to a judgment that the

A declaratory judgment making a determination of whether a debt actually qualifies as non-dischargeable under § 523(a)(3)(B) may then be sought by either the debtor or creditor in either the bankruptcy or a state court.[33]

It is undisputed that the debt to C&L was not scheduled in either of the Morrows' 2010 Bankruptcy Cases.[34] Nor was C&L listed as a creditor in the 2010 Bankruptcy Cases, resulting in the failure of C&L to receive any official notification of those cases during their pendency.[35] The petition filed in the State Court Action makes clear allegations that at least some of the debt was acquired by intentionally tortuous activity, such that it would fall under the definition "of a kind" discussed in § 523(a)(3)(B).[36] As a result, the issue of whether the debt was discharged in the 2010 Bankruptcy Cases was an open question after those cases were closed.

*2. The State Court had the authority to make a determination of dischargeability of C&L's debt pursuant to § 523(a)(3)(B) in the State Court Action.*

In *In re Candidus*, the court described the various ways for parties to obtain a judicial determination of dischargeability post-discharge and case closure:

i) if the creditor pursues a lawsuit on the claim, the debtor can assert the bankruptcy

---

debtor remains personally liable for the debt."); *In re McGregor*, 233 B.R. 406, 408 (Bankr. S.D. Ohio 1999) ("Bankruptcy courts and state courts share concurrent jurisdiction to determine the dischargeability of debts based on a debtor's failure to schedule a debt under 11 U.S.C. § 523(a)(3)(B)." (citing *In re Moon*, 116 B.R. 75, 75 (Bankr. E.D. Mich. 1990); *In re Walker*, 195 B.R. 187, 205 (Bankr. N.H. 1996); *In re Massa*, 217 B.R. at 419)).

[33] *See In re Candidus*, 327 B.R. at 118.

[34] *See supra* undisputed material fact No. 15.

[35] *Id*. Whether C&L had actual knowledge of the 2010 Bankruptcy Cases was a factual issue subject to determination in the choice forum.

[36] *See* Motion Exh. No. 9, *at Docket No. 15-9*, ¶ 26–30.

13

discharge as an affirmative defense and the court with jurisdiction over the lawsuit can decide whether the debt falls within any of the exceptions to discharge, ii) the debtor may be able to remove the collection effort to the bankruptcy court, iii) either the debtor or the creditor can move to reopen the bankruptcy case pursuant to Fed. R. Bankr.P. 4007(b) for the purpose of filing a complaint to determine dischargeability, and iv) the debtor can bring an action against the creditor in the bankruptcy court to enforce the § 524(a)(2) discharge injunction.[37]

C&L chose to file a lawsuit on its claim in the State Court, which had jurisdiction to determine whether the debt had been discharged in the 2010 Bankruptcy Cases.  It is undisputed that C&L filed a petition in the State Court that placed the dischargeability of the Morrows' debt squarely at issue in the State Court Action.[38]  Likewise, it is undisputed that the petition alleged the Morrows had filed bankruptcy; alleged that the Morrows had failed to notify C&L of the bankruptcy filing; and alleged that the Morrows' debt to C&L was therefore not discharged by the 2010 Bankruptcy Cases.[39]  The Morrows have also not disputed that a portion of the debt C&L sought to recover in the State Court Action was "of a kind" discussed in § 523(a)(3)(B).[40]  No parties have challenged the *in personam* jurisdiction of the State Court over the parties, or over the subject matter of the validity and extent of the Morrows' debt to C&L under applicable non-bankruptcy law.  This Court finds that the State Court had jurisdiction over the parties and the subject matter of whether the C&L debt had been discharged in the 2010 Bankruptcy Cases, and had authority to rule on C&L's cause of action

---

[37] *In re Candidus*, 327 B.R. at 118.

[38] *See supra* undisputed material fact No. 18.

[39] *Id.*

[40] *See supra* undisputed material fact No. 26 (Amounts reduced to judgment in the State Court Action were based on forged endorsements on checks and fraud.).

pursuant to § 523(a)(3)(B).[41]

Defendants argue that the entire State Court Action was void *ab initio* as a violation of the Morrows' discharge injunctions from the 2010 Bankruptcy Cases. "The plain language of § 524(a)(1) provides that any judgment is void if it is a determination of the personal liability of a debtor with respect to a *discharged* debt."[42]  Section 524 states:

(a) A discharge in a case under this title–

> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor *with respect to any debt discharged under section 727*, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset *any such debt* as a personal liability of the debtor, whether or not discharge of such debt is waived[.][43]

The § 524 injunction only applies to debts that *have been discharged* by a relevant provision of the Bankruptcy Code.[44]  The issue of whether a debt was excepted from discharge pursuant to § 523(a) "may be determined either in the court that entered the discharge or—in most instances—in another

---

[41] 28 U.S.C. § 1334(b).

[42] *In re Candidus*, 327 B.R. at 120 (emphasis added). *See also In re Massa*, 217 B.R. at 420 ("Section 524(a)(1) and (2) and the Discharge Order void any judgment in connection with *any debt discharged under Section 727*, and further operate as an injunction against the collection of any such debt.") (emphasis added).

[43] § 524(a)(1–2) (emphasis added).

[44] *See* Fed. R. Civ. P. 8, made applicable to this proceeding by Fed. R. Bankr. P. 7008 (Advisory Committee Notes to 2010 Amendment) ("But § 524(a) applies only to a claim that was actually discharged.").  Because the Court finds that the injunction of § 524(a) does not apply to the State Court Action, the Court will not consider the Defendants' arguments regarding waiver under that section.

court with jurisdiction over the creditor's claim."[45]  Such litigation is not enjoined by § 524(a).  C&L was not enjoined from seeking a determination in the State Court Action regarding the dischargeability of its debt pursuant to § 523(a)(3)(B).  Because the status of the dischargeability of the debt was inchoate when the State Court Action was commenced, the State Court Judgment was not rendered void by reason of the discharge order entered in the 2010 Bankruptcy Cases.

*3.  In the absence of the entire judgment roll in the State Court Action, this Court is unable to determine whether it is precluded from considering the issues of dischargeability of the debt under Oklahoma preclusion doctrines.*

The validity of a creditor's claim is determined by rules of state law.[46]  When a federal court reviews the preclusive effect of a state court judgment, the full faith and credit statute directs a federal court to look to the preclusion law of the state in which the judgment was rendered.[47]  As a federal court sitting in Oklahoma, I must decide what, if any, preclusive effect Oklahoma courts would accord the State Court Judgment.[48]  Oklahoma law recognizes two forms of preclusion presented by previous judgments: 1)  claim preclusion (sometimes referred to as res judicata), and 2) issue preclusion (sometimes referred to as collateral estoppel).[49]

The Oklahoma Supreme Court has made the following statements regarding the use of

---

[45]  *Id.  See also In re Everly*, 346 B.R. 791, 795 (8th Cir. BAP 2006) ("11 U.S.C. § 523 lists those debts which are excepted from discharge. The discharge injunction obviously does not operate as to these debts.").

[46]  *Grogan v. Garner*, 498 U.S. 279, 283 (1991).

[47]  *Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (citing 28 U.S.C. § 1738).

[48]  *In re Laing*, 945 F.2d 354, 358 (10th Cir. 1991); *Bolling v. City & Cnty. of Denver, Colo. ex rel. McNichols*, 790 F.2d 67, 68 (10th Cir. 1986).

[49]   *Miller v. Miller*, 956 P.2d 887, 896–97 (Okla. 1998).

16

preclusion doctrines by Oklahoma courts:

> When a claim or issue is sought to be *barred* by an earlier judgment *in another case*, or when the legal bar of some prior judgment is sought to be *avoided*, the party relying on the adjudication *dehors* the case then before the trial court *must* secure admission (for the record on appeal) *of the entire judgment roll* (or record proper) *in the other case*. Unlike the trial courts, an appellate court may *not* take *judicial notice of any material* on file below, which is not incorporated into the appellate record for review. The meaning, legal effect and validity of a nisi prius adjudication cannot be assessed based solely on the four corners of a journal entry that memorializes the terminal ruling (or some other disposition) in the case. *That assessment, both here and below, must be made upon review of the entire judgment roll (or record proper)*, which consists of ". . . the petition, the process, return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court. . . ."[50]

As Judge Hall recently discussed in *In re Burris*, the requirement of providing the entire judgment roll applies equally when a bankruptcy court is asked to apply preclusion doctrines:

> Oklahoma courts require a party relying on issue preclusion to "produce–as proof of its terms, effect and validity–the entire judgment roll for the case which culminated in the decision invoked as a bar to relitigation." *Salazar v. The City of Oklahoma City*, 1999 OK 20, 976 P.2d 1056, 1061 (1999). Without the judgment roll, no court can determine with the requisite degree of certainty what claims were pressed for adjudication and which of the tendered issues were actually submitted and decided. *Salazar*, 976 P.2d at 1061-62. Failure to produce the judgment roll is fatal to a request that a prior judgment be given preclusive effect. *Salazar*, 976 P.2d at 1062. Oklahoma bankruptcy courts recognize that the party seeking to rely on a judgment for preclusive force has the obligation to produce the entire judgment roll for the case in which the judgment was entered.[51]

In Oklahoma, the judgment roll consists of "the petition, the process, return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the

---

[50] *Ouellette v. State Farm Mut. Auto. Ins. Co.*, 918 P.2d 1363, 1367 n.25 (Okla. 1994) (citing Okla. Stat. tit. 12, § 32.1 (definition of judgment roll)).

[51] *In re Burris*, 591 B.R. 779, 793–94 (Bankr. W.D. Okla. 2018) (footnote omitted).

17

court[.]"[52] Although not technically required, the Court notes that it would also benefit from submission of the electronic docket sheet maintained in the State Court Action, in order to determine whether the entire roll has been provided for review.[53]

In this case, the Court has identified at least one court order entered in the State Court Action that was not submitted for review.  The State Court Judgment[54] makes reference to an "Order granting Plaintiff's Motion for Summary Judgment and directing the Plaintiff, C&L Supply, Inc. ("C&L") to prepare a Journal Entry of Judgment" (the "State Court Order").  This Court has been unable to locate the State Court Order among the various exhibits provided by either party.  As the party relying on the State Court Judgment for preclusive effect, it is C&L's burden to provide the entire judgment roll from the State Court Action for this Court's review.  In ruling on C&L's Motion, the Court must make all factual inferences in favor of the non-movant, here the Morrows, including the inference that the State Court Order provides them some respite to the application of all preclusion doctrines in this case.  Because all of the relief sought by C&L in the Motion is predicated on the preclusive effect of the State Court Judgment, the Motion must be denied in its entirety.

---

[52]  Okla. Stat. tit. 12, § 32.1 (". . .but if the items of an account, or the copies of papers attached to the pleadings be voluminous, the court may order the record to be made by abbreviating the same, or inserting a pertinent description thereof, or by omitting them entirely. Evidence must not be recorded."). *See also Ouellette*, 918 P.2d at 1367 n.25.

[53]  The Court notes that a copy of the docket sheet from the State Court Action was submitted as an exhibit to "Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss and Brief in Support," *at Docket No. 9-2*, but it was not submitted by either party in support of the Motion. Inspection of that exhibit further convinces the Court that material documents are missing from the record in this case.

[54]  Motion Exh. Nos. 11, *at Docket No. 15-11*, and 102, *at Docket No. 16-2*.

In closing, the Court notes that if the parties wish to utilize summary judgment as a tool going forward in this proceeding, any party that relies on the State Court Judgment for preclusive effect should provide the *entire* judgment roll from the State Court Action in addition to a copy of the docket sheet provided by the court in that action.[55]  If they choose such a procedure, the parties may assist the Court in the resolution of these matters by specifically addressing whether the State Court Judgment precludes this Court from considering whether the debt to C&L was discharged in the 2010 Bankruptcy Cases pursuant to § 523(a)(3)(B) under principles of claim preclusion.  In addition, the parties should also address whether the State Court Judgment precludes this Court from considering whether the debt to C&L is non-dischargeable in the 2018 Bankruptcy Cases pursuant to § 523(a)(2) and (a)(4) under principles of claim preclusion.[56]  If the parties wish to rely on the doctrine of issue preclusion to establish any facts or law in this proceeding, they should address the specific elements of that doctrine, and whether the issue sought to be precluded was actually litigated in the State Court Action.[57]

---

[55]  The Court notes that the same evidence will be required if the Court is asked to apply preclusion doctrines after a trial on the merits.

[56]  Specifically, the Court would benefit from briefing on the application of § 523(b) to the issue of whether the Court is precluded from revisiting the dischargeability of the C&L debt in this proceeding. That section states:

> (b) Notwithstanding subsection (a) of this section, a debt that was excepted from discharge under subsection (a)(1), (a)(3), or (a)(8) of this section . . . in a prior case concerning the debtor under this title . . . is dischargeable in a case under this title unless, by the terms of subsection (a) of this section, such debt is not dischargeable in the case under this title.

§ 523(b).

[57]  *See, e.g., Miller v. Miller*, 956 P.2d at 897 ("The defendant must show that the issue sought to be precluded was *actually litigated and determined* in the prior action between the

**Conclusion**

Plaintiff's Motion for Summary Judgment is denied.  The Court finds that it is unable to rule on the Motion in the absence of the entire judgment roll of the State Court Action. The parties are given until January 15, 2020, to file further dispositive motions.  If no such motions are filed, the matter will be set for trial.

Accordingly,

IT IS THEREFORE ORDERED that the Motion for Summary Judgment filed by C & L Supply, Inc, at Docket No. 15, be, and the same hereby is, denied without prejudice.

IT IS FURTHER ORDERED that the undisputed facts set forth herein are established in this proceeding, and will not require proof at trial.[58]

IT IS FURTHER ORDERED that the deadline for submission of dispositive motions is extended to January 15, 2020.

IT IS FURTHER ORDERED that if no dispositive motions are filed as of January 15, 2020, the Court will proceed to set the matter for trial.

Dated this 13th day of December, 2019.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

7391.1

---

parties or their privies, and that the determination was essential to the decision in the prior action.") (emphasis added).  For a good discussion of whether an issue had been actually litigated, *see* Restatement of Judgments (Second) § 27 cmts. d (When an issue is actually litigated.) and e (Issues not actually litigated.) (1982) (cited by *Miller v. Miller*, 956 P.2d at 897 n.22).

[58]  *See* Fed. R. Civ. P. 56(g) (applicable pursuant to Fed. R. Bankr. P. 7056).