**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

Filed/Docketed
Mar 17, 2020

| | |
|---|---|
| **IN RE:** | |
| **JEFFREY LYN MORROW,** | **Case No. 18-12437-M** |
| Debtor. | **Chapter 7** |
| **IN RE:** | |
| **MICHELLE RENEE MORROW,** | **Case No. 18-12447-M** |
| Debtor. | **Chapter 7** |
| **C & L SUPPLY, INC.,** | |
| Plaintiff, | |
| v. | **Adversary No. 19-01007-M** |
| **JEFFREY LYN MORROW,** | **(consolidated with 19-01008-M)** |
| Defendant. | |
| **C & L SUPPLY, INC.,** | |
| Plaintiff, | |
| v. | |
| **MICHELLE RENEE MORROW,** | **Adversary No. 19-01008-M** |
| Defendant. | |

**ORDER GRANTING RENEWED AND SUPPLEMENTAL MOTION**
**FOR SUMMARY JUDGMENT IN PART AND DENYING IN PART**[1]

---

[1]  This Order borrows heavily from an earlier Order Denying Motion for Summary
Judgment, entered by this Court at Docket No. 25, which denied plaintiff's Motion for Summary
Judgment (the "Motion"), *at Docket No. 15*, due to plaintiff's failure to submit the full judgment

In the ordinary chapter 7 bankruptcy case, a debtor schedules all of their debts in order to take advantage of the full extent of the discharge available under § 727 of the Bankruptcy Code.[2] In the rare case that a debtor omits a bona fide debt from their schedules, the extent of the debtor's discharge of that debt may be unclear. Further determination, either by the bankruptcy court or a state court of competent jurisdiction, may be required to clarify whether, and to what extent, the debt was covered by the order of discharge entered in the debtor's bankruptcy case, and whether it is still enforceable against the debtor. Before the Court is the Plaintiff's Renewed and Supplemental Motion for Summary Judgment (the "Renewed Motion"),[3] filed by C & L Supply, Inc. ("C&L" or "Plaintiff"), a Response,[4] filed by Michelle Renee Morrow ("Michelle Morrow") and Jeffrey Lyn Morrow ("Jeff Morrow") (collectively the "Defendants" or "Morrows"), and a Reply,[5] filed by Plaintiff. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7056.

---

roll from previous litigation on which it asked this Court to rely. Having been provided with the full judgment roll for Case No. CJ-14-16, District Court of Craig County, Oklahoma, *at Docket No. 26-1* (the "State Court Judgment Roll"), the Court is now able to address the merits of the present motion.

[2] 11 U.S.C. § 727. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

[3] Docket No. 26. On October 22, 2019, this Court ordered that Adversary Proceeding Nos. 19-01007-M and 19-01008-M be consolidated, and that this matter will proceed under Adversary Proceeding No. 19-01007-M. All docket numbers referenced herein will refer to that proceeding, unless otherwise stated.

[4] Docket No. 27.

[5] Docket No. 30.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409.  Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a).  Determination as to the dischargeability of a debt is a "core" proceeding as that term is defined in 28 U.S.C. § 157(b)(2)(I).

## Summary Judgment Standard

The United States Court of Appeals of the Tenth Circuit has held that

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.* Put differently, "[t]he question . . .  is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Shero v. City of Grove,* 510 F.3d 1196, 1200 (10th Cir. 2007) (quotation omitted). "On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quotation omitted).[6]

The Court will apply this standard to the Renewed Motion.

## Findings of Fact

The following material facts, to which there is no genuine dispute, were established by previous Court Order:[7]

---

[6] *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013).

[7] These facts were alleged by C&L in the Motion, *at Docket No. 15, at 8–11*, and not controverted by the Morrows.  These facts were deemed established in the Court's Order Denying Summary Judgment, *at Docket No. 25, at 20*.  The facts are repeated here for the convenience of the reader. Although not a procedure endorsed by this Court, Plaintiff purported

1.   Tri-City ("Tri-City") is a plumbing company owned by the Morrows.

2.   Beginning in at least 2007, Tri-City set up an account with C&L through which C&L sold various plumbing supplies and merchandise to Tri-City.

3.   Initially, Michelle Morrow individually guaranteed Tri-City's account with C&L.

4.   In May, 2009, Tri-City was seriously delinquent on its account with C&L and owed C&L $406,829.13.

5.   Through a series of meetings, C&L determined to loan Tri-City an additional $25,000.

6.   The purpose of the loan was to keep Tri-City in operation to allow Tri-City to finish jobs through which C&L would hopefully receive significant payments.

7.   The loan was documented through a promissory note from Tri-City to C&L and Guaranty Agreements signed by both of the Morrows.

8.   Through the Guaranty Agreements, both Michelle Morrow and Jeff Morrow guaranteed all indebtedness of Tri-City to C&L.

9.   The Morrows' Guaranty Agreements also included representations from the Morrows to C&L. The representations included representations that (i) the fair saleable value of each Guarantor's assets exceeded their liabilities; (ii) each Guarantor was then meeting current liabilities as they mature; and (iii) no federal or state tax liens had been threatened or filed against each Guarantor.

---

to incorporate the Motion by reference into the Renewed Motion, and the parties proceeded in that manner. *See* Bankr. N.D. Okla. LR 7056-1(A) ("The movant shall not incorporate by reference arguments, replies, documents or portions of documents that were presented in earlier filings or other proceedings.").  The Renewed Motion and Reply present no new facts, only renewed legal argument.

10.     About the same time, C&L also began requiring joint check agreements and outright assignments of Tri-City's accounts on Tri-City's larger jobs or projects.

11.     The joint check agreements required Tri-City's customers to include C&L as a joint payee on checks issued to Tri-City.

12.     From December 9, 2009 through February 16, 2010, C&L's endorsement was forged on at least three checks totaling $33,426.90.

13.     The fraudulently endorsed checks were deposited into Tri-City's account, instead of being paid to C&L.

14.     On December 6, 2010, Michelle Morrow and Jeff Morrow each filed separate petitions for relief under chapter 7 of the United States Bankruptcy Code (the "2010 Bankruptcy Cases").

15.     Both Defendants failed to list C&L as a creditor in the 2010 Bankruptcy Cases and C&L was not listed or included on any mailings or notices of the bankruptcy filings.

16.     At the time the Morrows filed their 2010 Bankruptcy Cases, they owed C&L $259,922.15, and C&L would have been the Morrows' largest unsecured creditor.

17.     After the 2010 Bankruptcy Cases, C&L continued to do business with Tri-City.

18.     By early 2014, the account of Tri-City and the Morrows grew, and C&L filed suit against the Morrows and Tri-City on the account in the District Court of Craig County, Oklahoma (the "State Court" and "State Court Action"). The State Court Petition of C&L placed the dischargeability of the Morrows debt to C&L squarely at issue. The State Court Petition alleged the Morrows had filed bankruptcy; alleged that the Morrows had failed to notify C&L of the bankruptcy filing; and alleged that

the Morrows' debt to C&L was therefore not discharged by the 2010 Bankruptcy Cases.[8]

19.     On April 12, 2014, the Morrows and Tri-City filed separate answers to the State Court Petition of C&L in the State Court Action. In their answers, the Morrows admitted that the debt to C&L was not discharged by the 2010 Bankruptcy Cases. Also, each of the answers included eight affirmative defenses, however, neither the Morrows nor Tri-City asserted discharge in bankruptcy as an affirmative defense.

20.     The parties proceeded with scheduling and discovery in the State Court Action throughout 2014 and most of 2015.

21.     On November 19, 2015, C&L obtained judgment in the State Court Action against Tri-City and the Morrows totaling $456,003.35 (the "State Court Judgment").

22.     C&L proceeded with execution on its judgment, including garnishments and asset hearings.

23.     On December 13, 2018, Jeff Morrow filed a second petition for relief under chapter 7 of the United States Bankruptcy Code, Case No. 18-12437-M.

24.     On December 17, 2018, Michelle Morrow filed a second petition for relief under chapter 7 of the United States Bankruptcy Code, Case No. 18-12447-M (together with Case No. 18-12437-M, the "2018 Bankruptcy Cases").

25.     On February 15, 2019, C&L initiated the present adversary proceedings against

---

[8] Defendants deny that they failed to notify C&L of the 2010 Bankruptcy Case filings. They do not raise a genuine dispute that the State Court Petition *alleged* that they failed to notify C&L of the 2010 Bankruptcy Cases, which is all that the Plaintiff seeks to establish in ¶18 of the Motion.

6

Michelle Morrow and Jeff Morrow.

26.     The Complaints filed by C&L seek a judgment of this Court determining that the

following debt of the Morrows to C&L is non-dischargeable:

a. the sum of $106,594.47 (which was reduced to judgment in the State Court Action)

on the forged endorsement of C&L on three checks; and

b. the sum of $54,628.15 (which was reduced to judgment in the State Court Action)

on the Morrows' guaranty of the $25,000 loan obtained by the Morrows from C&L

through false pretenses, false representations and actual fraud.

Additionally, the Court notes that the debt to C&L is listed in the schedules of Debtor Jeff

Morrow in his pending case as disputed.[9] The debt to C&L is listed in the schedules of Debtor

Michelle Morrow in her pending case, but it is not listed as contingent, unliquidated, or disputed.[10]

To the extent the Conclusions of Law contain any items that should more appropriately be

considered Findings of Fact, they are incorporated herein by this reference.

## Conclusions of Law

C&L filed these adversary proceedings asserting that a portion of the debt owed to it by the

Morrows should be excepted from discharge pursuant to § 523(a)(2) and/or (a)(4).  In the Renewed

Motion and Reply, C&L alleges that the State Court Judgment precludes this Court from

reconsidering whether the debt was excepted from discharge in the 2010 Bankruptcy Cases pursuant

to § 523(a)(3)(B), under the doctrine of res judicata, or claim preclusion.  C&L goes on to argue that

the same doctrine precludes this Court from considering the dischargeability of the same debt in the

---

[9]   *See* Case No. 18-12437-M, Docket No. 1, at 21, Claim 4.2.

[10]   *See* Case No. 18-12447-M, Docket No. 1, at 19, Claim 4.2.

2018 Bankruptcy Cases pursuant to § 523(a)(2) and/or (a)(4).  In addition, C&L asserts that this Court is prevented from reconsidering issues regarding C&L's timely notice of the 2010 Bankruptcy Cases under the doctrine of collateral estoppel, or issue preclusion.  Defendants disagree, and believe that the debt was discharged in the 2010 Bankruptcy Cases, rendering the State Court Judgment void *ab initio*, or if not, leaving it to this Court to decide whether the debt is excepted from discharge in the 2018 Bankruptcy Cases.

Resolution of this matter requires the Court to determine 1) whether the debt to C&L was covered by the Morrows' discharges entered pursuant to § 727 in the 2010 Bankruptcy Cases; 2) whether the State Court had the authority to make a determination of dischargeability of C&L's debt in the State Court Action; 3) whether the State Court Judgment precludes this Court from considering the issues of dischargeability of the debt under Oklahoma preclusion doctrines; and, finally, 4) the status of the debt in the 2018 Bankruptcy Cases and this Court's role going forward. In doing so, the Court will take care to view inferences drawn from the underlying facts in the light most favorable to the Morrows.[11]

*1. The debt to C&L was not covered by the Morrows' discharges entered pursuant to § 727 in the 2010 Bankruptcy Cases.*

Among the obligations of a debtor to receive a discharge of debts in bankruptcy, § 521 provides that "(a) [t]he debtor shall–(1) file–(A) a list of creditors; and (B) unless the court orders otherwise–(i) a schedule of assets and liabilities[.]"[12] Those same duties are required by Bankruptcy

---

[11]  *See supra* text accompanying note 6.

[12]  § 521(a)(1).

Rule 1007(a)(1) and (b)(1).[13]   Under chapter 7 of the Bankruptcy Code, in exchange for executing

their duties under § 521, "the court shall grant the debtor a discharge" absent various conditions not

applicable here.[14]   The scope of the discharge is set out in § 727(b): *"Except as provided in section*

*523 of this title*, a discharge under subsection (a) of this section discharges the debtor from all debts

that arose before the date of the order for relief under this chapter . . . ."[15]  This applies to *all debts*

whether or not they are listed or scheduled by the debtor, subject to the exceptions contained in

§ 523.[16]  Section 523 provides a list of 19 specific types of debts that are not subject to the § 727

discharge.  Those include debts of the type described in § 523(a)(2), (a)(4), and (a)(6), which arise

from intentional torts.[17]   Section 523(c)(1) makes clear that "except as provided in subsection

(a)(3)(B)," a creditor must make a timely request of the bankruptcy court to determine whether a debt

of a kind specified in § 523(a)(2), (a)(4), or (a)(6) is excepted from discharge.[18]   Such a

determination of dischargeability under those subsections is within the *exclusive jurisdiction* of the

---

[13]  Fed. R. Bankr. P. 1007.

[14]  § 727(a).

[15]  § 727(b) (emphasis added).

[16]  *Id.*; *Judd v. Wolfe*, 78 F.3d 110, 113–14 (3d Cir. 1996).

[17]  *Judd v. Wolfe*, 78 F.3d at 114 ("Debts listed in sections 523(a)(2), (4) and (6) describe debts which arise from intentional torts such as fraud. They include debts incurred by 'false pretenses, false representation or actual fraud . . .' (523(a)(2)); debts incurred by 'fraud or defalcation while acting as a fiduciary . . .' (523(a)(4)); and debts 'for willful and malicious injury . . .' (523(a)(6))").

[18]  § 523(c)(1) ("Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.").

bankruptcy court.[19]  Where a creditor holding a debt for an alleged intentional tort receives adequate notice of a bankruptcy filing, failure to file a timely non-dischargeability request will result in the debt being discharged under § 727.[20]  Once a debt is discharged under § 727, § 524(a)(2) provides that the discharge operates as an injunction against any further attempt to collect the debt as a personal liability.[21]  Therefore, any collection activity in a state court setting would be prohibited, and any resulting judgment would be void upon entry.[22]  This is true whether or not the creditor has notice of the discharge.[23]

In addition to the three sections excepting intentional tort debts from discharge that require a determination by the bankruptcy court, § 523 contains 16 other categories of non-dischargeable debts that are self-effectuating.  Debts falling under these sections are excepted from discharge simply due to their character, and do not require a separate judicial determination.[24]  "The scope of

---

[19]  *Id. See also Brown v. Felsen*, 442 U.S. 127, 129–30 (1979); *Buke, LLC v. Eastburg (In re Eastburg)*, 447 B.R. 624, 633 (10th Cir. BAP 2011).

[20]  § 523(c)(1).  *See also Hathorn v. Petty (In re Petty)*, 491 B.R. 554, 558 (8th Cir. BAP 2013).

[21]  § 524(a)(2). *See, e.g., Lone Star Security & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 171 (9th Cir. BAP 2005).

[22]  § 524(a)(1); *In re Gurrola*, 328 B.R. at 175 ("It follows that judgments and acts in violation of the injunction are automatically void ab initio, hence self-executing, for the same reason as the automatic stay.").

[23]  *In re Gurrola*, 328 B.R. at 175 ("While lack of notice of the bankruptcy and of the discharge may serve as a defense to contempt sanctions, the legal consequences of acts in violation of the discharge injunction do not otherwise vary.") (citation omitted).

[24]  *In re Everly*, 346 B.R. 791, 795 (8th Cir. BAP 2006) ("There are nineteen exceptions to discharge listed in § 523(a) and all but three are self-effectuating. . . .By self-effectuating, we mean that no action is required before the discharge is entered. The debts are excepted from discharge simply because of the nature of the debts.") (citation and footnote omitted).

a discharge is final when entered and subsequent events do not change what debts were or were not discharged by that discharge."[25] Whether a particular debt falls into one of these categories, however, may not be obvious, and may require further judicial determination.[26] A determination of dischargeability under any of these 16 categories is in the nature of a declaratory judgment, and may be made by the bankruptcy court or in any appropriate non-bankruptcy forum.[27] A request for such a judgment may be filed by either a debtor or creditor "at any time," in either a bankruptcy court or a state court of competent jurisdiction.[28]

Among the debts excepted from discharge are those where the debtor failed to list a creditor or schedule the liability in time for the creditor to meaningfully participate in the case. Section 523(a)(3) states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

---

[25] *In re Anderson*, 72 B.R. 495, 496 (Bankr. D. Minn. 1987).

[26] *In re Everly*, 346 B.R. at 795 (citing *In re Anderson*, 72 B.R. at 496).

[27] 28 U.S.C. § 1334(b). *See In re Franklin*, 179 B.R. 913, 919 (Bankr. E.D. Cal. 1995) ("Section 1334(b) establishes the general proposition that state and federal courts have concurrent subject matter jurisdiction over civil proceedings that arise under, arise in, or are related to a bankruptcy case."); *In re Candidus*, 327 B.R. 112, 116–17 (Bankr. E.D.N.Y. 2005) ("Jurisdiction to determine dischargeability of these categories of debt is held concurrently by the bankruptcy court and any appropriate non-bankruptcy forum.") (citing 28 U.S.C. § 1334(b); Fed. R. Bankr. P. 4007 advisory committee's note (1983)); *In re Keenom*, 231 B.R. 116, 125 (Bankr. M.D. Ga. 1999) ("Because the discharge has already taken place, the relief sought from the court by the parties after the case has closed is not an order to discharge the debt, but rather a declaratory order that the debt was or was not already discharged.") (citing *In re Anderson*, 72 B.R. at 497).

[28] Fed. R. Bankr. P. 4007(a) ("A debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt."); Fed. R. Bankr. P. 4007(b) ("A complaint *other than under § 523(c)* may be filed at any time.") (emphasis added).

(3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit–

    (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

    (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.][29]

As one court summarized,

[T]his exception to dischargeability is applicable in only two situations. First, § 523(a)(3)(A) excepts unscheduled debt from discharge, where the creditor, due to the absence of notice or actual knowledge of the bankruptcy filing, failed to file a timely proof of claim. A timely proof of claim is crucial to a creditor's right to participate in a Chapter 7 distribution of assets and § 523(a)(3)(A) protects that right. Second, § 523(a)(3)(B) excepts unscheduled debt from discharge, where the creditor, due to the absence of notice or actual knowledge of the bankruptcy filing, failed to timely exercise his right to obtain a dischargeability determination of debts "of a kind specified in" § 523(a)(2), (4), or (6). Thus, § 523(a)(3)(B) protects the right of an unscheduled creditor to obtain a determination of nondischargeability of intentional tort debts, and helps vouchsafe the public policy that debts discharged in a Chapter 7 case are only debts honestly incurred.[30]

Courts have found that the failure to list a creditor or schedule a particular debt is enough to

bring that debt within the rubric of § 523(a)(3).[31]  The failure of the debtor to list a creditor/schedule

---

[29]  § 523(a)(3).

[30]  *In re Candidus*, 327 B.R. at 117.

[31]  *In re Massa*, 217 B.R. 412, 420 (Bankr. W.D.N.Y. 1998) ("A debtor who fails to list a creditor who holds a debt of a kind specified in Section 523(a)(3)(B) loses the jurisdictional protections of Section 523(c)."), *aff'd sub nom. Massa v. Addona*, No. 98-CV-6069, 1998 WL 34256560 (W.D.N.Y. July 9, 1998), *aff'd sub nom. In re Massa*, 187 F.3d 292 (2d Cir. 1999); *In re Franklin*, 179 B.R. at 924 ("In short, the penalty to the debtor for failing to schedule a fraud

a debt that is "of a kind specified in paragraph (2), (4), or (6)" of § 523(a) unlocks the concurrent jurisdiction of a competent non-bankruptcy forum to determine whether the debt meets the criteria set forth in § 523(a)(3).[32]   A creditor need only have a colorable claim for an unscheduled intentional tort in order to create an issue of fact regarding whether the debt has been discharged.[33]   A declaratory judgment making a determination of whether a debt actually qualifies as excepted from discharge under § 523(a)(3)(B) may then be sought by either the debtor or creditor in either the bankruptcy or a state court.[34]

It is undisputed that the debt to C&L was not scheduled in either of the Morrows' 2010 Bankruptcy Cases.[35]   Nor was C&L listed as a creditor in the 2010 Bankruptcy Cases, resulting in the failure of C&L to receive any official notification of those cases during their pendency.[36]   That

---

debt or otherwise to inform the creditor of the bankruptcy is forfeiture of the right to enjoy exclusive federal jurisdiction and loss of the sixty-day limitations period applicable in the exclusive jurisdiction actions.").

[32]   *In re Massa*, 217 B.R. at 419.

[33]   *In re Keenom*, 231 B.R. at 126–27 ("And if the state court finds the debtor does have a colorable claim under sections 523(a)(2), (4), or (6) and was deprived of the opportunity to timely request a determination of dischargeability of the debt because he had no notice of the bankruptcy proceeding in time to do so, then such a state court has the authority to declare that the debt was not discharged in the bankruptcy proceeding and proceed to a judgment that the debtor remains personally liable for the debt."); *In re McGregor*, 233 B.R. 406, 408 (Bankr. S.D. Ohio 1999) ("Bankruptcy courts and state courts share concurrent jurisdiction to determine the dischargeability of debts based on a debtor's failure to schedule a debt under 11 U.S.C. § 523(a)(3)(B).") (citing *In re Moon*, 116 B.R. 75, 75 (Bankr. E.D. Mich. 1990); *In re Walker*, 195 B.R. 187, 205 (Bankr. N.H. 1996); *In re Massa*, 217 B.R. at 419).

[34]   *See In re Candidus*, 327 B.R. at 118.

[35]   *See supra* undisputed material fact No. 15.

[36]   *Id*. Whether C&L had actual knowledge of the 2010 Bankruptcy Cases was a factual issue subject to determination in the choice forum.

was enough to raise the question of whether the debt had been excepted from discharge in the 2010 Bankruptcy Cases.  As a result, the issue of whether the debt was excepted from discharge in the 2010 Bankruptcy Cases was an open question after those cases were closed.

*2.  The State Court had the authority to make a determination of dischargeability of C&L's debt pursuant to § 523(a)(3) in the State Court Action.*

In *In re Candidus*, the court described the various ways for parties to obtain a judicial determination of dischargeability post-discharge and case closure:

> i) if the creditor pursues a lawsuit on the claim, the debtor can assert the bankruptcy discharge as an affirmative defense and the court with jurisdiction over the lawsuit can decide whether the debt falls within any of the exceptions to discharge, ii) the debtor may be able to remove the collection effort to the bankruptcy court, iii) either the debtor or the creditor can move to reopen the bankruptcy case pursuant to Fed. R. Bankr.P. 4007(b) for the purpose of filing a complaint to determine dischargeability, and iv) the debtor can bring an action against the creditor in the bankruptcy court to enforce the § 524(a)(2) discharge injunction.[37]

C&L chose to file a lawsuit on its claim in the State Court, which had jurisdiction to determine whether the debt had been excepted from discharge in the 2010 Bankruptcy Cases.  It is undisputed that the State Court Petition filed by C&L placed the dischargeability of the Morrows' debt squarely at issue in the State Court Action.[38]  Likewise, it is undisputed that the State Court Petition alleged the Morrows had filed bankruptcy; alleged that the Morrows had failed to notify C&L of the bankruptcy filings; and alleged that the Morrows' debt to C&L was therefore excepted from discharge by the 2010 Bankruptcy Cases.[39]  The Morrows have also not disputed that a portion of the debt C&L sought to recover in the State Court Action was "of a kind" discussed in

---

[37] *In re Candidus*, 327 B.R. at 118.

[38] *See supra* undisputed material fact No. 18.

[39] *Id.*

§ 523(a)(3)(B).[40]  No parties have challenged the *in personam* jurisdiction of the State Court over the parties, or over the subject matter of the validity and extent of the Morrows' debt to C&L under applicable non-bankruptcy law.  This Court finds that the State Court had jurisdiction over the parties and the subject matter of whether the C&L debt had been excepted from discharge in the 2010 Bankruptcy Cases, and had authority to rule on C&L's cause of action pursuant to § 523(a)(3).[41]

Defendants argue that the entire State Court Action was void *ab initio* as a violation of the Morrows' discharge injunctions from the 2010 Bankruptcy Cases.  "The plain language of § 524(a)(1) provides that any judgment is void if it is a determination of the personal liability of a debtor with respect to a *discharged* debt."[42]  Section 524 states:

> (a) A discharge in a case under this title–
>
>> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor *with respect to any*

---

[40]  *See supra* undisputed material fact No. 26 (C&L *alleged* that some of its debt was based on forged endorsements on checks and fraud in the State Court Action, even if the eventual State Court Judgment rested on contract theories of liability.).

[41]  28 U.S.C. § 1334(b).  The Court notes that because the debt was unscheduled in the 2010 Bankruptcy Cases, C&L alleged it had no notice of those cases, and the State Court had no information regarding whether a bar date was set to file proofs of claim in those cases, the State Court had *jurisdiction* and *authority* to find the debt excepted from discharge pursuant to § 523(a)(3)(A) or (B).  A finding under § 523(a)(3)(A) would certainly have been *erroneous*, but nonetheless *valid* and subject to the full faith and credit of this Court. *See In re Parker*, 313 F.3d 1267, 1269 (10th Cir. 2002) ("the bankruptcy court correctly found that § 523(a)(3)(A) does not apply because the Debtor's Chapter 7 case was a no asset case with no claims bar date set") (*aff'g* and quoting *In re Parker*, 264 B.R. 685, 694–95 (10th Cir. BAP 2001).

[42]  *In re Candidus*, 327 B.R. at 120 (emphasis added). *See also In re Massa*, 217 B.R. at 420 ("Section 524(a)(1) and (2) and the Discharge Order void any judgment in connection with *any debt discharged under Section 727*, and further operate as an injunction against the collection of any such debt.") (emphasis added).

15

*debt discharged under section 727*, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset *any such debt* as a personal liability of the debtor, whether or not discharge of such debt is waived[.][43]

The § 524 injunction only applies to debts that *have been discharged* by a relevant provision of the Bankruptcy Code.[44]  The issue of whether a debt was excepted from discharge pursuant to § 523(a) "may be determined either in the court that entered the discharge or—in most instances—in another court with jurisdiction over the creditor's claim."[45]  Such litigation is not enjoined by § 524(a).  C&L was not enjoined from seeking a determination in the State Court Action regarding the dischargeability of its debt pursuant to § 523(a)(3).  Because the status of the dischargeability of the debt was inchoate when the State Court Action was commenced, the State Court Judgment was not rendered void by reason of the discharge order entered in the 2010 Bankruptcy Cases.

*3.   As a result of the State Court Judgment, the Morrows' entire debt to C&L was excepted from discharge in the 2010 Bankruptcy Cases.  Even if that determination was erroneous, this Court is prevented by the doctrine of claim preclusion from finding otherwise.*

The validity of a creditor's claim is determined by rules of state law.[46]  When a federal court

---

[43] § 524(a)(1–2) (emphasis added).

[44] *See* Fed. R. Civ. P. 8, made applicable to this proceeding by Fed. R. Bankr. P. 7008, Advisory Committee Notes to 2010 Amendment ("But § 524(a) applies only to a claim that was actually discharged.").  Because the Court finds that the injunction of § 524(a) does not apply to the State Court Action, the Court will not consider the Defendants' arguments regarding waiver under that section.

[45] *Id.  See also In re Everly*, 346 B.R. 791, 795 (8th Cir. BAP 2006) ("11 U.S.C. § 523 lists those debts which are excepted from discharge. The discharge injunction obviously does not operate as to these debts.").

[46] *Grogan v. Garner*, 498 U.S. 279, 283 (1991).

16

reviews the preclusive effect of a state court judgment, the full faith and credit statute directs a federal court to look to the preclusion law of the state in which the judgment was rendered.[47]  As a federal court sitting in Oklahoma, I must decide what, if any, preclusive effect Oklahoma courts would accord the State Court Judgment.[48]  Oklahoma law recognizes two forms of preclusion presented by previous judgments: 1)  claim preclusion (sometimes referred to as res judicata), and 2) issue preclusion (sometimes referred to as collateral estoppel).[49]

"Under the principle of claim preclusion, a final judgment on the merits of an action precludes the parties from relitigating not only the adjudicated claim, but also any theories or issues that were actually decided, *or could have been decided*, in that action."[50]  The elements of claim preclusion under Oklahoma law are: 1) an identity of subject matter, of the parties or their privies, of the capacity of the parties and of the cause of action; 2) the court that heard the original action

---

[47]   28 U.S.C. § 1738.  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005); *Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (citing 28 U.S.C. § 1738).

[48]   *In re Laing*, 945 F.2d 354, 358 (10th Cir. 1991); *Bolling v. City & Cnty. of Denver, Colo. ex rel. McNichols*, 790 F.2d 67, 68 (10th Cir. 1986); *Eaton v. Weaver Mfg. Co.*, 582 F.2d 1250, 1256 n.8 (10th Cir. 1978).

[49]   *Miller v. Miller*, 956 P.2d 887, 896–97 (Okla. 1998).

[50]   *Miller v. Miller*, 956 P.2d at 896 (emphasis added). *See also Ouellette v. State Farm Mut. Auto. Ins. Co.*, 918 P.2d 1363, 1365 (Okla. 1994); *Wilson v. Kane*, 852 P.2d 717, 722 (Okla. 1993).  *Accord, Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc.*, 497 F.3d 1096 (10th Cir. 2007*); Eaton v. Weaver Mfg. Co.*, 582 F.2d 1250, 1256–57 (10th Cir. 1978) ("In any event, the final and unappealed state court judgments involving the same claims serve as res judicata as between the parties to the prior action as to all questions that were *or could have been litigated* in the first case.") (emphasis added) (applying Oklahoma law); *Spence v. Latting*, 512 F.2d 93, 98 (10th Cir. 1975) ("Where a second suit between the same parties or their privies is on the same cause of action, the final judgment in the prior action is conclusive as to all matters which were actually litigated as well as *those which could have been litigated*.") (emphasis added) (applying Oklahoma law).

must have been one of competent jurisdiction; and 3) the judgment rendered must have been a judgment on the merits of the case and not upon purely technical grounds.[51] Oklahoma applies a wrongful act or transactional definition of a "cause of action."[52] "Thus, no matter how many 'rights' of a potential plaintiff are violated in the course of a single wrong or occurrence, damages flowing therefrom must be sought in one suit or stand barred by the prior adjudication."[53]

The court in *Fooshee v. Craig*[54] collected previous statements of law by the Oklahoma Supreme Court regarding the doctrine of claim preclusion:

> A judgment or decree upon the merits is conclusive between the parties, and those in privity with them, and the facts thus established can never thereafter be contested between them, even upon a different cause of action; and *where the subsequent action is upon the same cause of action*, not only the facts thus adjudicated are concluded, but all the *material facts which might have been presented* as constituting the claim *or defense* are concluded between the same parties or their privies.[55]

Also,

> In the trial of a cause by a court of competent jurisdiction, its decree upon the merits is conclusive between the parties, upon all the facts adjudicated, together with all the material facts *which might have been presented* as constituting a claim *or defense.* Such issues of fact so adjudicated, or *which might have been presented* for consideration, cannot thereafter become the subject-matter for litigation between the

---

[51] *Carris v. John R. Thomas and Assocs., P.C.*, 896 P.2d 522 (Okla. 1995); *Hausler v. Felton*, 739 F. Supp. 2d 1327, 1331 (N.D. Okla. 2010) (citing *Robinson v. Texhoma Limestone, Inc.*, 100 P.3d 673, 677 n.11 (Okla. 2004)), *aff'd*, 457 Fed. Appx. 727 (10th Cir. 2012) (unpublished).

[52] *Retherford v. Halliburton Co.*, 572 P.2d 966, 969 (Okla. 1977).

[53] *Id.*

[54] 237 P. 78 (Okla. 1924).

[55] *Id.* at 82 (quoting *Corrugated Culvert Co. v. Simpson*, 151 P. 854 (Okla. 1915)) (emphasis added).

same parties, or those in privity *in a collateral proceeding*.[56]

Thus, failure to raise a defense in an action before a court with proper jurisdiction over the subject matter and the parties, will, upon a final decision on the merits, prevent the parties or their privies from raising a collateral attack in a second forum regarding the same claims.[57]   The principles of claim preclusion apply even if the judgment of the first court is erroneous, as long as it had jurisdiction over the matter.[58]   The Court of Appeals for the Tenth Circuit has stated:

---

[56] *Id.* (quoting *U.S. Fid. & Guar. Co. v. Harmon*, 218 P. 682 (Okla. 1923)) (emphasis added).

[57] The same principles apply under federal preclusion law. *See Brown v. Felsen*, 442 U.S. 127, 131 (1979) ("Res judicata prevents litigation of all grounds for, *or defenses to*, recovery that were previously available to the parties*, regardless of whether they were asserted or determined in the prior proceeding*.") (citations omitted) (emphasis added); *Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 378 (1940) ("The remaining question is simply whether respondents having failed to raise the question in the proceeding to which they were parties and in which they could have raised it and had it finally determined, were privileged to remain quiet and raise it in a subsequent suit. Such a view is contrary to the well-settled principle that res judicata may be pleaded as a bar, not only as respects matters actually presented to sustain or defeat the right asserted in the earlier proceeding, 'but also as respects any other available matter which might have been presented to that end'.") (quoting *Grubb v. Pub. Utils. Comm.*, 281 U.S. 470 (1930)); *Valley View Angus Ranch*, 497 F.3d at 1102 ("The failure to interpose a defense to the plaintiff's claim precludes the defendant from thereafter asserting the defense as a basis for attacking the judgment.") (citing Restatement of Judgments § 18 (1982)); *Daniels v. Thomas*, 225 F.2d 795, 798 (10th Cir. 1955) ("In *Grubb v. Public Utilities Comm.*, 1930, 281 U.S. 470, 50 S.Ct. 374, 74 L.Ed. 972, is found a good statement of the applicable law. The Supreme Court there held that a state judgment was res judicata as to all issues presented and decided or which could have been presented and decided. The court held that as to any ground available but not put forward an appellant must abide by the rule 'that a judgment upon the merits in one suit is res judicata in another where the parties and subject-matter are the same, not only as respects matters actually presented to sustain or defeat the right asserted, but also as respects any other available matter which might have been presented to that end.'") (citation omitted).

[58] *See, e.g., Paine v. Griffin (In re Paine)*, 283 B.R. 33, 39 (9th Cir. BAP 2002) ("Application of principles of res judicata is not defeated by error in the original judgment. . . . What is required is that the loser have had the opportunity to test the final judgment on appeal.") (citations omitted); *In re Toussaint*, 259 B.R. 96, 102–03 (Bankr. E.D.N.C. 2000) ("However, once the state court exercises concurrent subject matter jurisdiction and renders judgment, the

> It is only when the judgment of a state court is void either because that court lacked jurisdiction of the subject matter or of the parties to the action, or because it entered a judgment which it had no power to enter under the law, that such judgment may be reviewed in a federal court.[59]

These statements make it clear that a second court may be bound not only by *express* determinations made by a previous court, but also by determinations that were *necessarily implied* by that court, as long as certain conditions prevail.[60]

The first step in our analysis is to understand what, exactly, took place in the State Court Action. The State Court (as discussed *supra*) had jurisdiction over the parties and the subject matter presented in the State Court Action. That included subject matter jurisdiction over the issue of whether the debt to C&L had been excepted from discharge in the 2010 Bankruptcy Cases, as well as jurisdiction over the state law issues of the Morrows' liability to C&L under various contract and tort theories. Having alleged that the *entire* debt was excepted from discharge in the 2010 Bankruptcy Cases, and receiving no dispute from the Morrows, it appears that both the parties and the State Court treated the issue as settled. Neither the State Court Petition, the Answers filed by the Morrows, nor the pleadings regarding summary judgment, made any distinction or clarification to suggest that only a portion of the debt was not excepted from discharge, or that certain parts of the debt should receive different treatment. Although the Morrows' 2010 Bankruptcy Cases received

___

state court judgment is at worst erroneous, not void ab initio, and the bankruptcy court lacks jurisdiction to collaterally attack the decision.").

[59] *Daniels v. Thomas*, 225 F.2d 795, 797 (10th Cir. 1955).

[60] *Accord, Jones v. Medlock*, 202 P.2d 212, 213 (Okla. 1948) (holding that a "decision of this court on a first appeal settled and determined not only all questions actually presented, but all questions existing in the record and necessarily involved in the decision *by implication*") ("This rule, an application of the principle of res judicata, seems to be generally adhered to by both state and federal courts and has been repeatedly upheld by the Supreme Court of the United States.").

a passing mention in C&L's summary judgment motion before the State Court, the issue of dischargeability of the debt does not appear to have been further litigated by the parties. The State Court granted C&L's request for summary judgment, and C&L itself submitted a draft of the judgment that was ultimately entered.[61]  The State Court Judgment was a judgment on the merits finding the Morrows liable to C&L on a promissory note (the "Note Debt"), for goods sold (the "Open Account Debt"), and for attorney's fees (the "Attorney Fee Debt").[62]  The liability appears to be based on state law contract theories, as the State Court Judgment makes no mention of fraud or other intentional torts.

While the State Court Judgment makes no mention of the Morrows' 2010 Bankruptcy Cases, § 523(a)(3), or the dischargeability of the debt to C&L, we must *infer* that the court *necessarily* determined that the *entire* debt was excepted from discharge in the 2010 Bankruptcy Cases pursuant to § 523(a)(3). This is because, having gone to the trouble of giving C&L a judgment for the Note Debt and Open Account Debt, the State Court *must* have believed that the debt was not subject to a prior discharge. Any other interpretation of the State Court Judgment, i.e., that the court intended to leave the question open for future determination, would have the effect of allowing a collateral attack on the State Court Judgment. Successful prosecution of such a claim would result in the nullification of the State Court Judgment and would impair the rights of C&L established therein.

This Court is not unsympathetic to the Morrows. Anyone with even a cursory knowledge

---

[61] *See* Order *in* State Court Judgment Roll, Docket No. 26-1, at 211 ("The Plaintiff is directed to prepare the Journal entry of Judgment."); Judgment Against Defendants, Tri-City Services, Incorporated, Michelle Morrow and Jeff Morrow, *Id*. at 215.

[62] *Id*. at 218.  *See also Union Oil Co. of Cal. v. Bd. of Equalization of Beckham Cnty.*, 913 P.2d 1330, 1334 (Okla. 1996) (A granting of a summary judgment motion on the merits of a cause of action is an adjudication on the merits.).

of bankruptcy law can see that the State Court Judgment is riddled with error.  Only a portion of the

debt to C&L could *rightly* have been found excepted from discharge under § 523(a)(3)(B), given that

both 2010 Bankruptcy Cases were no-asset Chapter 7 cases (thus § 523(a)(3)(A) should not have

applied), and that a finding under § 523(a)(3)(B) *should* have been restricted to the portion of the

debt incurred through an alleged intentional tort.  But after receiving the (admittedly specious)

allegation in the State Court Petition that the *entire* debt was not discharged in the 2010 Bankruptcy

Cases, the Morrows not only *failed to raise any defense*, but actually *admitted that the debt was not

discharged*.[63]  One cannot fault the State Court for not inquiring further into the specific grounds by

which the debt was excepted from discharge in the 2010 Bankruptcy Cases, nor are those grounds

particularly important for the current proceeding. Based on the allegations made in the State Court

Petition, we know that the State Court's jurisdiction was based on the fact that the debt to C&L was

not scheduled in the 2010 Bankruptcy Cases, implicating § 523(a)(3).  The State Court Judgment

Roll submitted by the parties reflects that both parties were represented in the State Court Action,

and that the Morrows had proper notice of the action and every opportunity to raise objections and

defenses in that proceeding.  A careful reading of the State Court Judgment, which limited the

court's holding to purely contract theories of liability, reflects that the court *implicitly* found that the

*entire* debt had been excepted from discharge in the 2010 Bankruptcy Cases pursuant to § 523(a)(3).

The Morrows did not seek revision from the State Court for any error, nor did they exercise their

---

[63]  *See supra* undisputed material fact No. 19.  The State Court Petition alleged "35.  The
unscheduled indebtedness of the Morrows to C&L was not discharged through the Morrows'
bankruptcy proceedings." Docket No. 26-1 at 8.  Both of the Morrows simply answered the
allegation with the statement "35. This Defendant admits the allegation set forth in Number 35 of
the Plaintiffs Petition."  Docket No. 26-1 at 71 (Answer of Jeff Morrow) and Docket No. 26-1 at
79 (Answer of Michelle Morrow).

rights to appeal, resulting in the State Court Judgment becoming final and beyond review or attack by this Court.

*4. No preclusion doctrines operate to establish the dischargeability of C&L's debt in the 2018 Bankruptcy Cases. Its claims under § 523(a)(2) and (a)(4) remain to be litigated in this Adversary Proceeding.*

C&L now holds a garden-variety state court judgment for a debt owed by the Morrows that has not been excepted from discharge in any previous bankruptcy cases. C&L asks this Court to find a portion of that debt excepted from discharge in these cases pursuant to § 523(a)(2) and/or (a)(4). C&L asserts that under either claim or issue preclusion doctrines, this Court is limited in its role going forward. The Court respectfully disagrees, since neither of those doctrines apply.

*Claim preclusion*

While the doctrine of claim preclusion operates to prevent the Morrows from challenging the State Court's determination that the debt to C&L was excepted from discharge in the 2010 Bankruptcy Cases pursuant to § 523(a)(3), it does not prevent this Court from adjudicating C&L's claims pursuant to § 523(a)(2) and/or (a)(4). The first reason is statutory. Section 523(b) states that "a debt that was excepted from discharge under subsection . . . (a)(3) . . . in a prior case . . . *is dischargeable* in a case under this title *unless*, by the terms of subsection (a) of this section, such debt is not dischargeable in the case under this title."[64] Legislative history indicates that

---

[64]  § 523(b):
(b) Notwithstanding subsection (a) of this section, a debt that was excepted from discharge under subsection (a)(1), (a)(3), or (a)(8) of this section, under section 17a(1), 17a(3), or 17a(5) of the Bankruptcy Act, under section 439A of the Higher Education Act of 1965, or under section 733(g) of the Public Health Service Act in a prior case concerning the debtor under this title, or under the Bankruptcy Act, is dischargeable in a case under this title unless, by the terms of subsection (a) of this section, such debt is not dischargeable in the case under this title.

23

"[s]ubsection (b) of this section [523] permits discharge in a bankruptcy case of an unscheduled debt from a prior case."[65]

The second reason is found in case law.  The few cases that discuss § 523(b) confirm that C&L's claims pursuant to § 523(a)(2) and (a)(4) remain to be determined by this Court.[66]  The cases cited by C&L are consistent in their interpretation that § 523(b) includes 8 *exceptions to the general rule* of "once nondischargeable, always nondischargeable."[67]  One of those exceptions, which squarely applies in this case, is "a debt that was excepted from discharge under subsection . . . (a)(3)" of § 523.[68]  "In other words, debts of certain specified types, e.g. under § 523(a)(1), (3) and (8),

---

[65]  H.R. Rep. No. 95-595, at 365 (1977) (*reprinted in* Volume C *Collier on Bankruptcy* App. Pt. 4(d)(i) (Richard Levin & Henry J. Sommer eds., 16th ed.)).

[66]  *See, e.g., In re Pacher*, 553 B.R. 294, 297 (Bankr. S.D. Miss. 2016) ("In fact, Section 523(b) addresses what types of debts found nondischargeable in a prior case may be discharged in a later case. 11 U.S.C. § 523(b) (2010) (listing debts under 523(a)(1), (a)(3), and (a)(8) and other exceptions to discharge outside Section 523).").  In fact, the majority of references to § 523(b) found in cases found on Westlaw appear to be typos.

[67]  *See In re Garcia*, 313 B.R. 307, 310 (9th Cir. BAP 2004) ("*In general*, a determination of nondischargeability in one bankruptcy case bars redetermination of that issue in a subsequent bankruptcy case.") (emphasis added) (citing cases that acknowledge 8 exceptions to rule stated in § 523(b)); *In re Paine*, 283 B.R. 33, 37 (9th Cir. BAP 2002) ("The key to the analysis is Bankruptcy Code § 523(b), which states an exception that proves a rule."); *In re Smith*, 401 B.R. 733, 737 (Bankr. D. Md. 2008) ("Section 523(b) only states exceptions to the "once nondischargeable, always nondischargeable" rule."); *In re Klasinski*, 215 B.R. 181, 183 (Bankr. C.D. Ill. 1997) ("This section [§ 523(b)] permits the discharge of certain debts which were not discharged in a prior proceeding, but which would have been discharged had the prior case been filed at a later date or had the creditor not been omitted from the schedules."); *In re Szafranski*, 147 B.R. 976, 988 (Bankr. N.D. Okla. 1992) ("§ 523(b) continues and improves upon the tradition of Act § 17b. It recognizes that specified types of exception to discharge, e.g. under § 523(a)(1), (3) and (8), need not involve debtor's 'dishonest dealing with the creditors,' and deserve to be up-dated and re-considered if circumstances change in a second bankruptcy case. This is an *express limitation of an implied general principle*.") (emphasis added).

[68]  § 523(b).

which are not discharged in a first bankruptcy, *will be discharged in a second bankruptcy, unless their non-dischargeability is reestablished.*"[69] "In summary, § 523(b) does two things. First, by its express provisions, it *permits discharge of a formerly-nondischargeable debt* where new circumstances make the debt newly dischargeable 'on its merits.'"[70]

The cases relied on by C&L present distinct factual differences that lead to a different result than this case.  First, each of those cases involved debts that had been previously found excepted from discharge under subsections of 523 that were *not among the 8 exceptions* found in § 523(b).[71] Moreover, each of those cases involved a prior finding that a debt was excepted from discharge *by a bankruptcy court*.  Specifically, for the debts excepted from discharge under § 523(a)(2), (a)(4), or (a)(6), only a bankruptcy court had jurisdiction to make such a finding, given the exclusive grant of jurisdiction found in § 523(c)(1).[72]

---

[69] *In re Szafranski*, 147 B.R. at 981 (emphasis added).

[70] *Id.* at 988 (emphasis added).

[71] *See In re Garcia*, 313 B.R. at 307  (§ 523(a)(2), (a)(6)); *In re Paine*, 283 B.R. at 33 (§ 523(a)(10));  *In re Smith*, 401 B.R. at 733 (§ 523(a)(2)); *In re Klasinski*, 215 B.R. at 181 (§ 523(a)(2)); *In re Szafranski*, 147 B.R. at 976 (§ 523(a)(2) or (a)(4)).

[72] Certainly some courts go forward and resolve the § 523(a)(2), (a)(4), or (a)(6) intentional tort claims as part of their § 523(a)(3)(B) analysis.  Some even declare it to be necessary. *See In re Franklin*, 179 B.R. 913, 924 (Bankr. E.D. Cal. 1995) ("In a section 523(a)(3)(B) action, the plaintiff *must prove* all the elements of nondischargeability under section 523(a)(2), (a)(4), or (a)(6)[.]") (emphasis added). *But see In re Massa*, 217 B.R. 412, 419 (Bankr. W.D.N.Y. 1998) ("[T]o the extent that the determination of the State Court Justice that the Addonas Claim was nondischargeable pursuant to Section 523(a)(2) was in fact nothing more than a statement that he had determined that it was a debt "of a kind specified in" Section 523(a)(2), since it was incurred by fraud, essentially a state law cause of action determined by the state courts every day, made as a necessary incident of his determination under Section 523(a)(3)(B), it was not made without jurisdiction."), *aff'd sub nom. Massa v. Addona*, 98-CV-6069, 1998 WL 34256560 (W.D.N.Y. July 9, 1998), *aff'd sub nom. In re Massa*, 187 F.3d 292 (2d Cir. 1999).

A state court has concurrent jurisdiction with the bankruptcy court to determine the dischargeability of unscheduled debts under § 523(a)(3).[73] Any findings made by the State Court would, at most, have been a determination that the Morrows owed a debt "*of a kind* specified in paragraph (2), (4), or (6)" of § 523(a), i.e., a debt based on an intentional tort under applicable state law.[74] The interplay of § 523(a)(3), (b), and (c)(1) makes it clear that jurisdiction over exceptions to discharge under § 523(a)(2), (a)(4), and (a)(6) *always* remains with the bankruptcy court.[75] Failure to schedule a debt involving an intentional tort does not somehow "transfer" that jurisdiction to a state court.[76] The statutory scheme merely allows a state court to apply state law to the "kind of" debts enumerated in § 523(a)(2), (a)(4), and (a)(6), and to find those debts excepted from discharge under § 523(a)(3)(B) in the right circumstances. That is a far cry from having jurisdiction over a claim that the debt was excepted directly under § 523(a)(2), (a)(4), or (a)(6), which is a determination

---

[73] *In re Candidus*, 327 B.R. 112, 119 (Bankr. E.D.N.Y. 2005).

[74] *In re Massa*, 217 B.R. at 419.

[75] *See, e.g., Brown v. Felsen*, 442 U.S. 127, 136 (1979) ("By the express terms of the Constitution, bankruptcy law is federal law, U. S. Const., Art. I, § 8, cl. 4, and the Senate Report accompanying the amendment described the bankruptcy court's jurisdiction over these § 17 claims as "exclusive[.]") (citing S. Rep. No. 91–1173, p. 2 (1970); S. Rep. No. 91–1173, p. 2 (1970)); *In re McKendry*, 40 F.3d 331, 335 (10th Cir. 1994) (Acknowledging that *Brown* was based on § 17 of the former Bankruptcy Act, but that "the same reasoning applies to the question of dischargeability under § 523(a)(2) of the current Bankruptcy Code, which is substantially identical to former section 17(c).").

[76] *See* Defendant's Response To Plaintiff's Renewed and Supplemental Motion for Summary Judgment and Brief in Support, Docket No. 27, at 6 ¶ 3. The Court wishes to correct any misunderstanding created by the Order Denying Motion for Summary Judgment, *at Docket No. 25*. Holding concurrent jurisdiction to determine an exception to discharge under § 523(a)(3) does not extend that jurisdiction for a state court to make a further determination under § 523(a)(2), (a)(4), or (a)(6). That jurisdiction remains exclusively with the bankruptcy court. § 523(c)(1).

that could only have been made by a bankruptcy court.

Upon the issuance of the State Court Judgment, C&L effectively held a judgment pursuant to a claim under § 523(a)(3) that its *entire* debt from the Morrows was not discharged in the 2010 Bankruptcy Cases.  Despite what C&L appears to believe, the State Court issued no judgment, implicit or otherwise, on the completely separate claims that its debt was excepted from discharge under § 523(a)(2) or (a)(4).[77]   A state court judgment that a debt is "of a kind" to one under § 523(a)(2), (a)(4), or (a)(6) does not preclude this Court, under its exclusive jurisdiction, from making a determination on a claim directly under those sections.  That is the basic lesson of *Brown v. Felsen*,[78] which applies directly to this case.

*Issue preclusion*

Oklahoma courts use the doctrine of issue preclusion to prevent the relitigation of issues or facts raised in a second suit on a separate claim between the parties. It is clear that "the doctrine of issue preclusion, does, under appropriate circumstances, apply in discharge exception proceedings pursuant to § 523(a)."[79]   The Oklahoma Supreme Court provides the following summary of the law:

> Parties are also precluded in subsequent actions from relitigating any distinct issues of fact or law necessary to the judgment in the prior case. This "issue preclusion" or "collateral estoppel," as we call it, "prevents relitigation of facts and issues actually

---

[77]   Even if the State Court had thoroughly litigated the intentional tort claims of C&L in the State Court Action and included its findings and conclusions in the State Court Judgment (which it did not), the result under the doctrine of claim preclusion would be the same. *See Brown*, 442 U.S. at 127.

[78]   *Id.* at 138 (After reviewing legislative history, the Court stated "[t]his broad language suggests that all debts arising out of conduct specified in § 17 should be excepted from discharge and the mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the debt.").

[79]   *Grogan v. Garner*, 498 U.S. 279, at 285 n.11 (1991).

litigated and necessarily determined in an earlier proceeding between the same parties or their privies" where the parties had a "full and fair opportunity" to litigate the issue. An issue is "actually litigated" if "it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined," and the issue is "necessarily determined" if "the judgment would not have been rendered but for the determination of that issue."[80]

Looking further to § 27 of the Restatement (Second) of Judgments, we find that comment e specifically addresses situations where an issue is found to *not* be "actually litigated":

An issue is not actually litigated if the defendant might have interposed it as an affirmative defense but failed to do so; nor is it actually litigated if it is raised by a material allegation of a party's pleading but is admitted (explicitly or by virtue of a failure to deny) in a responsive pleading; nor is it actually litigated if it is raised in an allegation by one party and is admitted by the other before evidence on the issue is adduced at trial[.][81]

C&L presents a belt and suspenders argument that this Court should now be precluded from considering the factual issue of whether C&L had timely notice of the 2010 Bankruptcy Cases. Having found that this Court is precluded from reconsidering the State Court's determination that the debt was excepted from discharge in the 2010 Bankruptcy Cases pursuant to § 523(a)(3), those issues are no longer relevant to the matters before this Court. Therefore, summary judgment on the matter of issue preclusion is denied.

## Conclusion

Plaintiff's Renewed and Supplemental Motion for Summary Judgment is granted in part and

---

[80] *Martin v. Phillips*, 422 P.3d 143, 145 (Okla. 2018) (citing *Nealis v. Baird*, 996 P.2d 438, 458 (Okla. 1999) (which itself cites Restatement (Second) Judgments, § 27 cmt. d (1982)). *See also In re Zwanziger*, 741 F.3d 74, 77 (10th Cir. 2014) (applying Oklahoma law) (*quoting Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("Issue preclusion ... bars successive litigation of [1] *an issue of fact or law* [2] *actually litigated and resolved* in a valid court determination [3] *essential* to the prior judgment, even if the issue recurs in the context of a different claim.") (emphasis added by *Zwanziger* court; internal quotation marks omitted).

[81] Restatement (Second) of Judgments § 27 cmt. e (1982).

denied in part.  The Court finds that the pre-petition debt of the Morrows to C&L was excepted from discharge pursuant to § 523(a)(3) in the Morrows' 2010 Bankruptcy Cases, by operation of the State Court Judgment.  Under the doctrine of claim preclusion, this Court is precluded from finding otherwise.  Therefore, summary judgment on this claim is granted.   C&L did not establish that the State Court ruled on its claims pursuant to § 523(a)(2) or (a)(4), or that any preclusion doctrine under Oklahoma law prevents this Court from adjudicating those claims in this Adversary Proceeding. Therefore, summary judgment on the grounds of claim and issue preclusion as they apply to C&L's intentional tort claims are denied.

Accordingly,

IT IS THEREFORE ORDERED that the Renewed and Supplemental Motion for Summary Judgment filed by C & L Supply, Inc, *at Docket No. 26*, be, and the same hereby is, granted in part and denied in part.

IT IS FURTHER ORDERED that the State Court's finding that the debt to C&L was excepted from discharge in the Morrows' 2010 Bankruptcy Cases pursuant to § 523(a)(3) is given preclusive effect in this Adversary Proceeding under the doctrine of claim preclusion.  This claim is deemed established, and no further evidence need be presented.  Summary judgment on this issue is granted.

IT IS FURTHER ORDERED that no preclusion doctrines operate to preclude this Court from determining the dischargeability of the debt to C&L pursuant to § 523(a)(2) and/or (a)(4) in this Adversary Proceeding. Summary judgment on those issues is denied.

IT IS FURTHER ORDERED that further proceedings on the dischargeability of C&L's debt pursuant to § 523(a)(2) and/or (a)(4) will be set by separate order.

Dated this 17th day of March, 2020.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

7409v5